NEW YORK STATE CLUB ASSOCIATION, INC., Appellant, v CITY OF NEW YORK et al., Respondents.

First Department, July 31, 1986

## APPEARANCES OF COUNSEL

*Angelo T. Cometa* of counsel *(Louis J. Lefkowitz, Alan Mansfield* and *Debra A. Roth* with her on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for appellant.

*Patricia A. O'Malley* of counsel *(Leonard Koerner, Caryn M. Hirshleifer* and *Elizabeth J. Logan* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

FEIN, J.

I would affirm for the reasons stated in the careful and thoughtful opinion by Justice Louis Grossman at Special Term. However, the dissent requires additional comment.

Local Laws, 1984, No. 63, amending New York City's prohibition against invidious discrimination by clubs which are not "distinctly private", added the following definition to Administrative Code of the City of New York, § B1-2.0 (9): "An institution, club or place of accommodation shall not be considered in its nature distinctly private if it has more than four hundred members, provides regular meal service and regularly receives payment for dues, fees, use of space, facilities, services, meals or beverages directly or indirectly from or on behalf of nonmembers for the furtherance of trade or business. For the purposes of this section a corporation incorporated under the benevolent orders law or described in the benevolent orders law but formed under any other law of this state, or a religious corporation incorporated under the education law or the religious corporations law shall be deemed to be in its nature distinctly private."

The dissenter asserts that Local Law No. 63 offends the due process and equal protection clauses of the NY Constitution (art I, §§ 6, 11) and US Constitution 14th Amendment because it exempts from coverage certain "private" corporations incorporated under, or referred to in, the Benevolent Orders Law, the Education Law or the Religious Corporations Law. In effect, the dissent concludes that the exemptions provide for an unconstitutional "lack of equal treatment." .

Benevolent orders (benevolent associations, benefit associations, fraternal or friendly societies) are statutorily recognized as organizations founded primarily for the protection or relief of their members and their dependents (Insurance Law § 4501

[a]). These societies, by their very definition, are not public. Religious corporations are defined as "created for religious purposes" (Religious Corporations Law § 2). Benevolent orders are treated differently by a number of State laws *(see, e.g.,* Education Law § 5001 [2] [e]; Civil Rights Law § 53).

There is no showing that these distinctions are constitutionally suspect.

It was long ago written: "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *(Tigner v Texas,* 310 US 141, 147). On the contrary, in order to pass constitutional muster, the mandate is that a legislative classification be as narrowly tailored as possible, precisely to meet constitutional limitations. The purpose is stated in *Plyler v Doe* (457 US 202, 216): "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose."

On this basis it is clear that Local Law No. 63 does not violate the equal protection clause in defining what are "distinctly private" clubs within its compass. Nor can it be concluded that the classification and exemptions are not related to a permissible public purpose. By its terms, Local Law No. 63 is designed to bring within the City Human Rights Law's enforcement mechanism clubs which are not private, precisely because the financial and other benefits to be derived from membership and participation in club activities regularly inure to nonmembers. However, a benevolent order has another purpose, set forth in Insurance Law § 4501 (a), as "formed, organized and carried on solely for the benefit of its members and their beneficiaries".

By statutory definition, these societies are not public. The purpose of Local Law No. 63 is solely to bring public organizations within the ambit of the City Human Rights Law.

Exemption of religious corporations is likewise justified for the purposes of Local Law No. 63. Religious Corporations Law § 2 defines a religious corporation as one "created for religious

purposes". Such corporations are patently not engaged in commercial activity for the benefit of nonmembers and thus are not within the compass of the statute.

It is not without significance that religious corporations and benevolent orders are themselves subject to separate and distinct bodies of law (the Religious Corporations Law and the Benevolent Orders Law), evidencing legislative recognition that they are subject to special, albeit not always different, legislation. Thus, schools conducted by fraternal or benevolent orders are not subject to State licensing requirements (Education Law § 5001 [2] [e]). Benevolent orders are exempt from registration and filing requirements applicable to other membership and unincorporated associations (Civil Rights Law § 53). Such exemptions do not deny equal protection. In *Bryant v Zimmerman* (278 US 63, 75-76), Civil Rights Law § 53 was sustained against an equal protection challenge premised on the exclusion of benevolent orders. The statute required an oath-bound organization to file with the Secretary of State a sworn copy of its constitution, bylaws, rules, regulations and oath of membership, together with a roster of its members and officers. The law exempted labor unions and benevolent orders from its filing requirements. The *Bryant* court emphasized that a classification is justified when it serves a legitimate State purpose and the difference between the classes of organizations has been shown by experience and is not " 'purely arbitrary, oppressive or capricious.' " *(Radice v New York*, 264 US 292, 296.)

*Rostker v Goldberg* (453 US 57), relied upon in the dissent, sheds limited light on our problem. That case, holding that Congress could constitutionally apply the draft registration law to men only, demonstrates that in certain circumstances a sex differentiation may be made by legislation without violation of due process or equal protection inhibitions. *(Cf. Matter of United States Power Squadrons v State Human Rights Appeal Bd.*, 59 NY2d 401, finding that the Power Squadrons, boating organizations which were not "distinctly private", had violated the law [Executive Law § 296] by excluding females from membership.)

Plaintiff's contention that the law is not one of general applicability, and is unduly burdensome to those affected, is without basis. The legislative purpose of curtailing discriminatory practice in clubs whose character and operation make them public accommodations by clearly defined standards does not violate due process or the equal protection of the law,

because the definition excludes other clubs. The exemptions serve a proper legislative purpose. The procedure is plainly devised to determine whether there has been compliance. No unconstitutional burden is imposed.

The judgment of Supreme Court, New York County (Louis Grossman, J.), entered November 22, 1985, denying plaintiff's motion for summary judgment and granting defendants' cross motion for summary judgment, should be affirmed, without costs.

KUPFERMAN, J. P. (dissenting). We are all agreed that discrimination of any sort in either a place of public or private accommodation, is anathema.

The City of New York, in a narrow area, going beyond Civil Rights Act of 1964 title II (42 USC § 2000a *et seq.*) and the Human Rights Law (Executive Law § 290 *et seq.*), has added Local Laws, 1984, No. 63 to Administrative Code of the City of New York, chapter 1, title B (§ B1-1.0 *et seq.*) to provide that any private exclusion will not apply for private clubs, which otherwise might be excluded from coverage, if they have more than 400 members and provide for regular meal service and "regularly receive * * * payment * * * on behalf of [a] nonmember * * * for the furtherance of trade or business." (Administrative Code § B1-2.0 [9].)

Obviously, the exception factors are designed to encompass organizations whose size or usage indicates activity which is really more public than private. *(See in general, Roberts v United States Jaycees,* 468 US 609; *Matter of United States Power Squadrons v State Human Rights Appeal Bd.,* 59 NY2d 401.)

Unfortunately, in the effort to limit discrimination, the very Local Law No. 63 is, in itself, discriminatory in that it denies equal protection to similarly situated persons. *(See, Rostker v Goldberg,* 453 US 57, 79.)

Local Law No. 63 provides: "For the purposes of this section a corporation incorporated under the benevolent orders law or described in the benevolent orders law but formed under any other law of this state, or a religious corporation incorporated under the education law or the religious corporations law shall be deemed to be in its nature distinctly private."

The Benevolent Orders Law lists a large number of organizations with substantial membership and eating facilities, which would, accordingly, be exempt, even though they would otherwise be in the category that should be subjected to a

nondiscrimination clause. *(See, Roberts v United States Jaycees, supra.)*

The due process and equal protection clauses of the NY Constitution, article I, § 11 and US Constitution 14th Amendment, being violated by the lack of equal treatment, Local Law No. 63 must be found unconstitutional.

SULLIVAN and Ross, JJ., concur with FEIN, J.; KUPFERMAN, J. P., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on November 22, 1985, affirmed, without costs and without disbursements.