Anthony F. DiGIOVANNI, on behalf of himself and all others similarly situated, Plaintiff,

v.

CITY OF ROCHESTER, Defendant.

No. CIV–87–0044T.

United States District Court, W.D. New York.

Feb. 26, 1988.

Greisberger, Zicari, McConville, Cooman, Morin & Welch, P.C. (Richard A. Dollinger and Kevin S. Cooman, of counsel), Rochester, N.Y., for plaintiff.

City of Rochester, Corp. Counsel's Office (Barry Watkins, of counsel), Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, District Judge.

## INTRODUCTION

Plaintiff, Anthony DiGiovanni ("DiGiovanni") commenced this action against the City of Rochester ("the City") based on the City's withholding of taxes from payments made to DiGiovanni after he was disabled on the job.[1] DiGiovanni maintains that the City improperly withheld taxes from non-taxable payments. The City has moved for summary judgment pursuant to Fed.R.Civ. P. 56 dismissing DiGiovanni's claims on various grounds. DiGiovanni has cross-moved for summary judgment dismissing certain of the City's affirmative defenses.

## FACTS

DiGiovanni is a firefighter in the City of Rochester Fire Department. On December 11, 1976, he was injured on the job when he suffered a myocardial infarction and cardiac arrest. As a result of this injury, DiGiovanni is disabled and has been unable to perform his duties as a firefighter. DiGiovanni remains disabled today.

Since the time of his injury, the City has paid DiGiovanni an amount equivalent to his former regular salary. These payments are made pursuant to the New York General Municipal Law § 207–a and the Rochester City Charter § 8B–5 which provide in substance that the City shall pay a firefighter who is injured in the performance of his duties the full amount of his regular salary until his disability arising from such injury has ceased.

From 1977 through 1985, the City deducted Federal Insurance Contribution Act ("FICA") and Federal and State income taxes from the payments made to DiGiovanni. Throughout this period, DiGiovanni received W–2 Wage and Tax Statements from the City which characterized these amounts as "Wages, Tips, Other Compensation." In accordance with this characterization, the City withheld taxes from these payments and remitted them to the appropriate governmental body or agency. Similarly, DiGiovanni apparently treated these payments as taxable income in preparing his income tax returns. DiGiovanni maintains that in December, 1985, he learned that the payments from the City were non-

1. DiGiovanni has filed a class action complaint on behalf of himself and others similarly situated. His motion for class certification was adjourned by this Court's Stipulation and Order dated June 4, 1987. In light of the procedural posture of the case at this time, I will discuss the facts solely as they apply to DiGiovanni. However, the Court is cognizant that its rulings may apply to a number of other City employees as well.

taxable. DiGiovanni apparently succeeded in obtaining reimbursement for the FICA payments and taxes withheld for the years 1983 through 1985. However, he has been unable to recover the amounts withheld during the years 1977 through 1982.

## DISCUSSION

DiGiovanni's complaint states five claims. Count 1 alleges that the City's withholding of FICA and Federal income taxes violated 26 U.S.C. §§ 3402 and 3403. Count 2 alleges that the City's withholding of taxes constituted a taking of DiGiovanni's property without due process, and requests damages under 42 U.S.C. § 1983. Count 3 alleges that the City's withholding of taxes violated New York State Tax Law § 675 and New York State Labor Law § 193. Count 4 alleges that the City was negligent, and Count 5 alleges breach of an implied contract of fair dealing.

In its answer, the City asserts numerous affirmative defenses including statute of limitations, failure to state a claim, and statutory immunity pursuant to 26 U.S.C. § 3403 and New York Tax Law §§ 190 and 675. In its current motion for summary judgment, the City relies primarily on its arguments that the complaint fails to state a claim, and that the City is statutorily immune. DiGiovanni has cross-moved to strike the City's affirmative defenses based on failure to state a claim, statutory immunity, and the City's claim that its FICA withholdings were proper under the applicable New York law. Solely for purposes of these cross-motions, I assume that the City's withholding of FICA and Federal and State taxes was improper.

### I. The Federal Tax Withholding Statutes

In his first cause of action, DiGiovanni alleges that the City's withholding of taxes violated certain federal tax withholding statutes, 26 U.S.C. §§ 3402 and 3403. He maintains that the payments made by the City to disabled firefighters were a tax exempt form of workers' compensation. Workers' compensation payments are not considered "gross income," and are, there-fore, not subject to Federal taxation. 26 U.S.C. § 104(a)(1). The City disagrees, characterizing the payments made as "wages" or "salary."

Section 3402 provides that every employer making payment of wages shall deduct and withhold a tax from such wages, as determined in accordance with certain tables and other provisions. This section then sets forth certain rules with respect to exemptions and deductions. Section 3403 provides in full:

The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment.

DiGiovanni does not have a cause of action based on the federal tax withholding statutes, 26 U.S.C. §§ 3402 and 3403. Even assuming that DiGiovanni is correct, and that the City's withholding was not in accordance with these statutes, §§ 3402 and 3403 do not create a cause of action. Rather, these provisions simply detail the obligations of the employer to the Federal Government with respect to the withholding of taxes from wages paid.

In determining whether to infer a private cause of action from a federal statute, the Court must focus on Congress' intent in enacting the statute. *Thompson v. Thompson*, —— U.S. ——, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Four primary factors are relevant to this inquiry: (1) whether the plaintiff is one of the class for whose "especial" benefit the statute was enacted such that the statute creates a federal right in favor of the plaintiff; (2) whether there is any explicit or implicit indication of legislative intent to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and (4) whether the cause of action is one traditionally relegated to State law. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted); *see also, Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984).

In determining whether DiGiovanni is a member of the class for whose "especial" benefit the statute was created, the question is not simply whether DiGiovanni would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries. *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). The statutes in question outline the procedures for the withholding of income tax and place the responsibility for such withholding upon the employer. They do "not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further. Such language does not indicate an intent to provide for private rights of action." *Id.* at 1779. If these statutes are intended to benefit anyone, it is the Federal Government to whom the withheld tax is to be remitted. There is no indication anywhere in the language of the statutes that Congress intended to confer rights on employees with respect to the withholding of tax.

■ DiGiovanni has failed to identify anything in the legislative history suggesting that §§ 3402 and 3403 were created for the especial benefit of employees. The parties have not pointed this Court to any indication of legislative intent to either create a federal remedy or to deny one. Therefore, in this instance, the consideration of the first two factors articulated in *Cort v. Ash* is dispositive. The language of §§ 3402 and 3403 does not suggest that these statutes were intended to create federal rights for the especial benefit of a class of employees, but rather that they were intended to benefit the Government through outlining a general scheme for the withholding of tax from wages. Nor is there any evidence that Congress anticipated the creation of a private remedy for employees suffering from incorrect withholding.

Thus, "it is unnecessary to inquire further to determine whether the purpose of the statute would be advanced by the judicial implication of a private action or whether such a remedy is within the federal domain of interest. These factors are only of relevance if the first two factors give indication of congressional intent to create the remedy." *California v. Sierra Club, supra* at 1781 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 574–576, 99 S.Ct. 2479, 2488–2489, 61 L.Ed.2d 82 (1979)). Therefore, DiGiovanni's first cause of action based on 26 U.S.C. §§ 3402 and 3403 is dismissed for failure to state a claim upon which relief can be granted.

## II. Section 1983.

■ DiGiovanni's second cause of action is based on 42 U.S.C. § 1983. In order to state a claim under § 1983, DiGiovanni must plead and prove: (1) that the conduct complained of deprived DiGiovanni of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). DiGiovanni maintains that the City, pursuant to an established policy, violated his rights under the tax withholding statutes and deprived him of property without due process of law in violation of the Fourteenth Amendment.

### A. Immunity.

The City maintains that it is immune from all liability based on the federal and state immunity statutes, 26 U.S.C. § 3403, New York Tax Law § 675. As previously discussed, § 3403 provides that an employer "shall not be liable to any person for the amount of any such [tax withholding] payment." 26 U.S.C. § 3403. Similarly, § 675 of the New York State Tax Law provides in pertinent part, "No employee shall have any right of action against his employer in respect to any moneys deducted and withheld from his wages and paid over to the tax commission in compliance or in intended compliance with this article." *N.Y.Tax L.* § 675. DiGiovanni maintains that because the payments made to him were a form of workers' compensation rather than

wages, the immunity statutes, like the withholding statutes, do not apply.

The question of whether § 3403 immunizes a state actor from an action for violation of civil rights pursuant to § 1983 is intriguing. However, the Court need not determine the breadth of this immunity for purposes of the current motion. Even if the City is immune from suit based on its withholding federal taxes, it may still be liable under § 1983 based on its withholding of state taxes. By its terms, the federal immunity statute does not apply to the City's withholding of state taxes. Moreover, the New York statutory immunity found in New York Tax Law § 675 cannot bar a § 1983 action. "Conduct that is wrongful under Section 1983 cannot be immunized by state law." *McClary v. O'Hare*, 786 F.2d 83, 85 (2d Cir.1986); *see also, Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (state immunity statute does not control § 1983 claim). Therefore, the Court is compelled to pass upon DiGiovanni's § 1983 claims.

### B. Color of State Law.

A municipality, such as the City, may be considered "a person acting under color of state law", and can be sued directly under § 1983 for monetary relief. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). DiGiovanni's allegation that the City had a "policy and practice" of withholding FICA and federal and state income tax from the payments made in violation of his due process rights satisfies the basic requirements for municipal liability. *Id.* 98 S.Ct. at 2035–2036; *see also, City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2433–34, 2436, 85 L.Ed.2d 791 (1985). The City does not appear to dispute that it had a policy of withholding taxes from these payments. Thus, the

"color of state law" requirement is satisfied.

### C. Section 1983 Claim Based on Federal Tax Withholding Statutes.

That aspect of DiGiovanni's § 1983 claim which is premised on his "rights" under the federal tax withholding statutes, 26 U.S.C. §§ 3402 and 3403, is dismissed. As previously discussed, those statutes simply do not vest DiGiovanni with any rights. They merely detail the obligations owed by the employer with respect to withholding, and provide that the employer may be liable to the Government for unpaid taxes if the withholding was improperly performed. The statutes do not vest in employees a right to have the withholding conducted properly.

### D. Section 1983 Claim Based on Lack of Procedural Due Process.

■ DiGiovanni has properly claimed that the City's policy deprived him of property without due process of law in violation of the Fourteenth Amendment.[2] In determining the viability of this claim, the Court must first address whether DiGiovanni was deprived of a protected interest, and if so, what process was his due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).

The protected interest in question here is DiGiovanni's claimed property interest to receive payments in an amount equal to his regular salary, as provided under New York General Municipal Law § 207–a, and the Rochester City Charter § 8(b)(5). These statutes create "an individual entitlement grounded in State law, which cannot be removed except 'for cause' ". *Logan v. Zimmerman Brush Co., supra*, 102 S.Ct. at 1155. The Supreme Court has previously held that a person receiving federal benefits under statutory and administrative standards defining eligibility for them has a property interest in receiving those bene-

---

2. The complaint does not allege a violation of substantive due process, and such a claim was not argued to the Court in the parties' papers or at oral argument. However, a substantive due process claim would not stand on these facts since the conduct complained of derives from the City's status as an employer rather than as a governmental actor. "We do not think that im-

proper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official. This is simply not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual." *McClary v. O'Hare, supra*, at 89 (citations omitted).

fits which is safeguarded by procedural due process. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (welfare benefits); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (Social Security disability benefits). Thus, DiGiovanni does have a vested property interest in the payments which is protected by the Due Process Clause of the Fourteenth Amendment.

The question now arises as to whether the City's tax withholding procedures were adequate to satisfy the requirements of procedural due process under the Fourteenth Amendment. I note initially that any post-deprivation remedies DiGiovanni may have in the state system are insufficient, in and of themselves, to satisfy the requirements of due process. The doctrine of *Parratt v. Taylor* does not apply where the deprivation is the result of an established state procedure. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Thus, the Court must examine the sufficiency of both the pre-deprivation and post-deprivation procedures used by the City.

At the end of each year, DiGiovanni received a W-2 Wage and Tax Statement from the City which listed the City's payments to him as "Wages, Tips, Other Compensation". The City's policy permitted a City employee to change his federal and state income tax withholding by filing a Federal and a State Employee's Withholding Allowance Certificate and a Certificate of Exemption from Withholding. These forms permitted an employee to inform his employer that he was not subject to withholding at all.[3]

Terrence M. Hooper, the Manager of Benefits and Personnel Systems for the City, submitted an affidavit in which he stated that the City automatically changes the employee's income tax withholding in accordance with the W-4 form filed by the employee. According to Hooper, the City does not challenge or confirm the information set forth on any withholding form filed by an employee. Hooper maintains that this has been the City's practice since he began working in the Bureau of Employee Relations in April, 1978. In a separate affidavit, Hooper states that he first became aware of the possibility that the payments made to disabled firefighters were not taxable in 1986, when he was shown a letter from the Internal Revenue Service to a retired Rochester firefighter.

In determining whether the procedures afforded by the City comported with the requirements of due process, the Court must examine and weigh various factors:

(1) the nature of the private and state interests involved; (2) the extent of the risk that without a hearing the plaintiff might erroneously be deprived of property and the value of a prompt hearing as a safeguard against that risk; (3) whether the state has a reasonable opportunity to provide a hearing before the deprivation occurs, and (4) the extent of the administrative burden on the state of being required to provide a formal rather than an informal hearing.

*Signet Construction Corp. v. Borg*, 775 F.2d 486, 491 (2d Cir.1985) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

My examination of these factors leads me to conclude that the City's procedures satisfy the requirements of procedural due process. The W-2 forms issued by the City provided DiGiovanni with notice that the City considered its payments to him to constitute taxable income, that the City was withholding FICA, federal and state taxes from the payments, and specified the amounts withheld. DiGiovanni had the opportunity to contest the amounts withheld by filing the appropriate withholding and exemption certificates. Moreover, apart from any procedures provided by the City, DiGiovanni could have challenged the withholding by refusing to report the payments

---

3. The City has produced copies of Federal and State W-4 Withholding Allowance Certificates for the year 1987. The Court takes judicial notice of the recent changes in the tax laws and the change in the W-4 forms. However, the parties have not indicated that these forms vary in any substantial way from the forms in use during the relevant time period with respect to the employee's ability to claim exempt status.

made as income on his tax returns and demanding the federal and state governments to reimburse him for the amounts withheld. Indeed, Hooper's affidavit indicates that the City was made aware of its error when a disabled firefighter obtained an opinion from the Internal Revenue Service that the payments were not taxable.

DiGiovanni maintains that the notice provided was inadequate because the City failed to inform him that the payments were non-taxable. I do not read the requirements of procedural due process so broadly as to require the City to inform individuals of its mistakes prior to committing them. "It must be remembered that even if a state decision does deprive an individual of life or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. State of California,* 444 U.S. 277, 100 S.Ct. 553, 558–559, n. 9, 62 L.Ed.2d 481 (1980).

The real gist of DiGiovanni's claim is that the City mistakenly characterized the payments made to him as taxable income when the payments were, in fact, non-taxable. As a result of the City's mistaken characterization of these payments, and its policy of withholding taxes from these payments, DiGiovanni has been deprived of money he would have otherwise received. However, DiGiovanni's counsel has not pointed this Court to any procedures which would have made the City's mistaken withholding proper. Nor can the Court conceive of any "procedures" which would have decreased the risk of erroneous deprivation. *Cf. Costello v. Town of Fairfield,* 811 F.2d 782, 787 (2d Cir.1987) (VanGraafeiland, J. concurring). ("In the routine administration of their financial affairs, governmental bodies cannot reasonably be expected to provide prior notice and opportunity for hearing with respect to every calculation of wages and pensions that might conceivably be the subject of a later dispute.")

Therefore, DiGiovanni's § 1983 claim based on the alleged deprivation of property without procedural due process is also dismissed. Since the federal claims in this action have been disposed of on summary judgment, I decline to exercise pendent jurisdiction over DiGiovanni's state claims. *See Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Federman v. Empire Fire and Marine Insurance Company,* 597 F.2d 798, 809 (2d Cir.1979); *Kavit v. A.L. Stamm & Company,* 491 F.2d 1176, 1180 (2d Cir. 1974). Therefore, Mr. DiGiovanni's complaint is dismissed in full.

## CONCLUSION

I have a great deal of sympathy for Mr. DiGiovanni and the other disabled City employees who have suffered as a result of this erroneous policy. I can well appreciate the importance of these funds to such disabled individuals. However, there are limitations on this Court's jurisdiction, and limitations on what this Court can do. Mr. DiGiovanni simply does not have a federal claim. The City may well have made a grievous error, and Mr. DiGiovanni may have suffered thereby, but mistakes by municipalities and state actors do not always give rise to violations of civil rights which can be remedied under § 1983. Mr. DiGiovanni may have a claim which can be addressed under the state system, but he simply has not suffered a violation of his civil rights.

WHEREFORE, the motion of the defendant the City of Rochester for summary judgment dismissing the complaint is granted. The Court does not reach plaintiff's cross-motions.

SO ORDERED.