**OMNI GROUP FARMS, INC., Cayuga Meadows, Inc. and Michael O'Neill, Plaintiffs,**

v.

**The COUNTY OF CAYUGA, Defendant.**

**No. 90–CV–1208.**

United States District Court, N.D. New York.

June 12, 1991.

---

3. Liuzzo did not pursue this claim in his counterclaim, nor did he make any motion on it.

Manes Rifken Frankel & Greenman, Syracuse, N.Y., for plaintiffs; Theodore Lyons Araujo, of counsel.

Pinsky & Skandallis, Syracuse, N.Y., for defendant; Neil M. Gingold, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

On November 7, 1990 the plaintiffs, Omni Group Farms, Inc., ("Omni"), Cayuga Meadows Inc. ("Meadows") and Michael O'Neill ("O'Neill"), filed a complaint against defendant County of Cayuga ("County") alleging that the defendant passed legislation which interfered with certain existing and possible future contract rights of the plaintiffs. Plaintiffs' first cause of action, brought under 42 U.S.C. § 1983, claims that the defendant has enforced certain town ordinances in a discriminatory manner against them, thereby violating plaintiffs' Fourteenth Amendment rights to equal protection of the law. Plaintiffs' second cause of action claims that the legislation at issue imposes an unreasonable burden on interstate commerce, and was adopted by the County in an arbitrary and capricious manner. Plaintiffs further allege that as a result of this legislation, they have been damaged in the amount of $3 million.

On December 3, 1990, the defendant brought this motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.Proc. 12(b)(6). For the reasons stated below, this court grants the defendant's motion to dismiss both causes of action without prejudice to the plaintiffs to amend their complaint.

### Background

Omni and Meadows are closely-held corporations which are licensed to do business under the laws of the State of New York and which have their principal places of business in Skaneateles, New York. O'Neill is the president and principal shareholder of both Omni and Meadows. The defendant County of Cayuga is a municipal corporation duly organized and existing under the laws of the State of New York.

In 1986, Omni, Meadows and O'Neill leased 400 acres of land in Cayuga County. The following year, Omni acquired fee title to approximately 50 acres of land in this same County. The plaintiffs allege that they acquired all of this land for the express purpose of landspreading and composting certain types of sludge, primarily food processing, brewery, winery and cannery waste.

On October 29, 1987, Omni entered into a contract with Anheuser–Busch, Inc. ("Anheuser–Busch") wherein Omni agreed to landspread and/or compost Anheuser–Busch's brewery waste on the Omni property in return for that company's promise to pay Omni an estimated $12,000 per month, over a one year period, for such landspreading.[1] In order to fulfill their respective obligations under this contract, the plaintiffs and Anheuser–Busch each obtained permits from the New York State Department of Environmental Conservation ("DEC") which allowed Omni to landspread the waste. Soon thereafter, the defendant adopted Local Law # 5 for the year 1987, ("Local Law # 5") which has been in full force and effect since the date of its adoption. Section 1 of this law provides that:

> [It] shall be unlawful for any person, firm, corporation, partnership or other legal entity to deposit sludge which origi-

---

1. Under the terms of this contract, the plaintiffs could renew this agreement for an additional nine years.

nated or was collected outside the territorial limits of Cayuga County in any town or village (all municipalities outside of the City of Auburn), located in the County of Cayuga, henceforth.

On or about March 16, 1988, the defendant adopted Local Law # 4 for the year 1988 ("Local Law # 4"). Section 3 of this ordinance makes it unlawful for any entity to bring into the County any solid waste for disposal at a landfill. Those convicted of violating these ordinances may be fined up to $10,000 and imprisoned for a period of no longer than one year. Additionally, these laws provide that each day during which a violation occurs is to be deemed a separate violation of the same.

The materials which the plaintiffs have contracted to landspread and compost are sludge and/or solid waste as these terms are defined by Local Laws # 4 and # 5. Plaintiffs contend that the defendant enacted these ordinances with the specific purpose of preventing them from depositing the waste they receive from Anheuser–Busch in Cayuga County. Plaintiffs further claim that these laws have impaired their contractual obligations with Anheuser–Busch, and that they have been deprived of the income they would have realized pursuant to said contract by the defendants' local laws. Specifically, plaintiffs' first cause of action alleges that William Catto ("Catto"), the Director of the Cayuga County Health Department, advised plaintiff O'Neill that the defendant would enforce Local Law # 5 against the plaintiffs. They also contend that, upon information and belief, the County has chosen not to enforce Local Laws # 4 and # 5 against other business entities which have deposited solid waste and sludge obtained from outside of the territorial limits of Cayuga County in the County.[2] They further allege that the defendant's failure to enforce these local laws against individuals other than the plaintiffs has been intentional, purposeful, arbitrary and in violation of the their equal protection rights afforded by 42 U.S.C. § 1983. Plaintiffs' second cause of action alleges that these laws create an

unreasonable burden on interstate commerce and that such violations are redressable under 42 U.S.C. § 1983.

The County brings the instant motion seeking dismissal of plaintiffs' complaint. The defendant contends that: (i) the County is not a "person" within the meaning of § 1983; (ii) the contract rights of which the plaintiffs seek redressment are not redressable under § 1983; and (iii) claims alleging violations of the Commerce Clause can not be brought under 42 U.S.C. § 1983.

### Discussion

(a) The standard for review of plaintiffs' complaint.

■ A motion to dismiss for failure to state a claim tests only the sufficiency of the complaint. *Green v. Maraio,* 722 F.2d 1013, 1015 (2nd Cir.1983), *quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It is well established that a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Green,* 722 F.2d at 1015–1016, *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Anderson v. Coughlin,* 700 F.2d 37, 40 (2d Cir.1983). However, a civil rights complaint must contain more than conclusory, vague or general allegations of constitutional deprivation. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1987); *Neustein v. Orbach,* 732 F.Supp. 333, 346 (E.D.N.Y.1990); *Thomas v. Beth Israel Hosp. Inc.,* 710 F.Supp. 935, 942 (S.D.N.Y.1989). Such allegations must be amplified by specific instances of misconduct, *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977), or some specific allegations of fact indicating a deprivation of civil rights rather than conclusions. *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976); *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1100 (W.D.N.Y.1983). *See also Fonte v. Board of Managers of Continental Towers,* 848 F.2d 24, 26 (2d Cir. 1988).

---

**2.** *See* Verified Complaint, ¶ 48.

(b) Plaintiffs' first cause of action.

In order to prevail on a claim alleging a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the conduct complained of was committed by a "person", acting under color of state law, and that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *See Oberlander v. Perales,* 740 F.2d 116, 119 (2d Cir.1984); *Weg v. Macchiarola,* 729 F.Supp. 328, 333 (S.D.N.Y.1990); *Di Giovanni v. City of Rochester,* 680 F.Supp. 80, 83 (W.D.N.Y.1988); *Ross v. Coughlin,* 669 F.Supp. 1235, 1238 (S.D.N.Y.1987).

█ Initially, the defendant contends that the County of Cayuga is not a "person" within the meaning of § 1983. However, the cases which the defendant cites in support of this contention are no longer authoritative statements of the law since the landmark case of *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

In *Monell,* the Supreme Court held that Congress intended municipalities and other local governmental units to be included among those persons to whom § 1983 applies. *Id.* at 690, 98 S.Ct. at 2035. Subsequent decisions by numerous courts have specifically held that counties are "persons" under § 1983. *See, e.g., City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Lucas v. O'Loughlin,* 831 F.2d 232, 234 (11th Cir. 1987), *cert. denied* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo,* 841 F.2d 872 (9th Cir.1987), *cert. denied,* 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); *Starrett v. Wadley,* 876 F.2d 808 (10th Cir.1989); *Hammond v. County of Madera,* 859 F.2d 797, 801 (9th Cir.1988); *Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir.1988), *citing Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *Doe v. New York City Dep't of Social Services,* 670 F.Supp. 1145, 1184 (S.D.N.Y.1987); *Arancibia v. Berry,* 603 F.Supp. 931, 936 (S.D.N.Y.1985). Thus, the defendant's contention that it is not a person within the meaning of § 1983 is wholly without merit.

█ Turning to the substantive elements of a claim alleging violations of the equal protection clause of the U.S. Constitution, it is well established that a law which is fair on its face may be applied so arbitrarily and unfairly as to amount to a violation of constitutional rights. *Cook v. City of Price,* 566 F.2d 699, 701 (10th Cir. 1977), *citing Yick Wo v. Hopkins,* 118 U.S. 356, 374, 6 S.Ct. 1064, 30 L.Ed. 220 (1887). In the present case, the plaintiffs allege that the County has chosen to enforce these laws against the plaintiffs while choosing not to enforce these ordinances against other individuals. To support a claim of selective enforcement, however, a plaintiff must allege purposeful discrimination. *Albert v. Carovano,* 851 F.2d 561, 573 (2d Cir.1988); *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980); *Cook,* 566 F.2d at 701, *citing Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Friedlander v. Cimino,* 520 F.2d 318, 320 (2d Cir.1975); *Birnbaum v. Trussell,* 347 F.2d 86, 90 (2d Cir.1965); *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1100 (W.D.N.Y.1983). Such purposeful discrimination is demonstrated when it is shown that the defendant selected or reaffirmed a particular course of action at least in part "because of", not merely "in spite of", its adverse effects upon the plaintiff. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *McCleskey v. Kemp,* 481 U.S. 279, 298, 107 S.Ct. 1756, 1770, 95 L.Ed.2d 262 (1987), *reh'g denied* 482 U.S. 920, 107 S.Ct. 3199, 96 L.Ed.2d 686 (1987). In addition to proving purposeful discrimination, a plaintiff alleging selective enforcement as the basis for an equal protection cause of action must specify instances in which he has been singled out for unlawful oppression in contrast to others similarly situated. *Albert,* 851 F.2d at 573; *University Club v. City of New York,*

655 F.Supp. 1323, 1328 (S.D.N.Y.1987), aff'd 842 F.2d 37 (2d Cir.1988), *quoting United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974). Moreover, a plaintiff must demonstrate that the government's prosecution has been invidious, in bad faith or based upon a government's desire to prevent the exercise of constitutional rights. *University Club,* 655 F.Supp. at 1328. The conscious exercise of some selectivity in enforcement does not, by itself, deny equal protection. *Berrios,* 501 F.2d at 1211; *University Club,* 655 F.Supp. at 1328, *citing Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962). Such enforcement without malicious intent may be justified when a test case is needed to clarify a doubtful law; *Cook* 566 F.2d at 701, *citing MacKay Telegraph Co. v. Little Rock,* 250 U.S. 94, 100, 39 S.Ct. 428, 430, 63 L.Ed. 863 (1919), or when officials seek to prosecute a particularly egregious violation and thereby deter other violators. *Cook,* 566 at 701, *citing People v. Utica Daw's Drug Co.,* 225 N.Y.S.2d 128, 16 A.D.2d 12 (1962).

■ In the present case, plaintiffs' complaint fails to allege any factual instances which support their claim that the defendant has not enforced Local Laws # 4 and # 5 against other individuals who are violating these ordinances. Nor does the complaint state any facts indicating that such individuals and business entities possessed waste similar to that of the plaintiffs. Additionally, the plaintiffs do not allege any facts indicating that the defendant purposefully discriminated against them, or that the government's prosecution of them was based upon impermissible considerations. Such allegations are necessary for a claim alleging selective enforcement. *See, e.g., Berrios, supra,* 501 F.2d at 1211. The

plaintiffs do allege that the defendant's failure to enforce Local Laws # 4 and # 5 *against individuals other than the plaintiffs* has been intentional, discriminatory, purposeful and arbitrary.[3] However, purposeful discrimination in claims alleging selective enforcement must be directed *towards the plaintiffs* in such actions. *See Tarkowski,* 644 F.2d at 1206, *citing Ellentuck v. Klein,* 570 F.2d 414, 430 (2d Cir. 1978).

Therefore, as alleged, the plaintiffs' first cause of action fails to sufficiently state a claim upon which relief may be granted.[4] Accordingly, the defendant's motion to dismiss plaintiffs' first cause of action must be granted without prejudice to the plaintiffs to file and serve an amended complaint which alleges such claims with the requisite specificity.

(c) Plaintiffs' second cause of action.

In their second cause of action, plaintiffs contend that some of the solid waste and sludge materials which they were to landspread and/or compost are derived from sources outside of New York and are in the stream of interstate commerce.[5] After the plaintiffs' composting operations are completed, some of the solid waste and sludge will allegedly be put back into the stream of commerce as fertilizer.[6] Plaintiffs allege that by enacting Local Laws # 4 and # 5 the defendant created an unreasonable burden on interstate commerce.

The County initially argues that the plaintiffs' allegation that its legislation created an unreasonable burden on interstate commerce is not redressable under § 1983. In doing so, the defendant relies heavily on *Consolidated Freightways Corp. of Dela-*

---

**3.** *See* Verified Complaint, ¶ 49.

**4.** The plaintiffs' complaint may also be defective because it does not allege that Catto, the Director of the Cayuga County Health Department, was vested with the authority to enforce the legislation in question and was acting pursuant to this authority as a state official when he advised the plaintiffs that he would enforce the legislation against them. *Monell* and numerous court decisions thereafter have made it clear that municipalities may not be held liable under

§ 1983 based simply on the doctrine of *respondeat superior. See id.,* 436 U.S. at 663 n. 7, 98 S.Ct. at 2022 n. 7; *Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986); *Martin v. City of New York,* 627 F.Supp. 892, 898 (E.D.N.Y.1985); *Keyes v. City of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984).

**5.** *See* Verified Complaint, ¶¶ 53, 54.

**6.** *Id.,* ¶¶ 56, 57.

*ware v. Kassel,* 730 F.2d 1139, 1144 (8th Cir.1984), *cert. denied* 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984), which held that claims under the Commerce Clause are not cognizable under § 1983 because among other things, "the Commerce Clause does not establish individual rights against the government, but instead allocates power between state and federal governments." *Id.* at 1144.

■ However, the Supreme Court has recently held that suits alleging violations of the Commerce Clause may be brought under 42 U.S.C. § 1983. *Dennis v. Higgins,* — U.S. —, 111 S.Ct. 865, 867, 112 L.Ed.2d 969 (1991). In *Dennis,* the Supreme Court held that a broad construction of § 1983 is required by the statutory language, "which speaks of deprivations of *any* rights, privileges, or immunities secured by the Constitution and laws." *Id.* at —, 111 S.Ct. at 868 (emphasis in original). The Court concluded by finding that the Supreme Court of Nebraska erred in holding that petitioner's Commerce Clause claim could not be brought under 42 U.S.C. § 1983. *Id.* 111 S.Ct. at 873. Thus, plaintiff's second cause of action may not be dismissed simply because it was brought under § 1983.

■ It is clear that in the absence of federal preemption of specific subject matter, states may, in the exercise of their police power, regulate matters of legitimate local concern even though such legislation has a concomitant effect upon interstate commerce. *Loretto Winery, Ltd. v. Gazzara,* 601 F.Supp. 850, 857 (S.D.N.Y. 1985), *modified* 761 F.2d 140 (2d Cir.1985), *citing Lewis v. BT Investment Managers Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Where a State acts evenhandedly to promote a legitimate local concern, such as protecting the environment, and the effect upon interstate commerce is merely incidental, the state regulation will be upheld unless "the burden on such commerce is clearly excessive in relation to the putative local benefits." *Loretto,* 601 F.Supp. at 857, *quoting Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *see*

*also Norfolk Southern Corporation v. Oberly,* 822 F.2d 388, 405 (3rd Cir.1987).

The court in *Evergreen Waste Systems, Inc. v. Metropolitan Service District,* 820 F.2d 1482 (9th Cir.1987) was faced with an issue similar to that before this court. In *Evergreen,* Oregon waste haulers sought to enjoin the enforcement of an ordinance which prevented individuals from depositing waste obtained from an out of a state district in a landfill owned and operated by a metropolitan service district and the City of Portland. *Id.* at 1483. The ordinance in question was designed to restrict the flow of waste going into the landfill, thereby extending its useful life. *Id.* at 1484. The statute in *Evergreen* applied to only one of Oregon's many landfills and banned waste from most of Oregon's counties in addition to out-of-state waste. *Id.* The *Evergreen* court found that the ordinance regulated evenhandedly because "evenhandedness requires simply that most out-of-state waste be treated no differently than in-state waste." *Id.* at 1484, *citing Washington State Trades Council v. Spellman,* 684 F.2d 627, 631 (9th Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

Because the ordinance regulated waste disposal evenhandedly, the *Evergreen* court applied the *Pike* balancing test, noted *supra,* which provides that where a State acts evenhandedly to promote a legitimate local concern, and the effect on interstate commerce is merely incidental, the state regulation will be upheld unless the burden on such commerce is clearly excessive in relation to the putative local benefits. *Pike,* 397 U.S. at 142, 90 S.Ct. at 847; *Evergreen,* 820 F.2d at 1485. In applying this test to the facts before it, the *Evergreen* court held that the ordinance served a legitimate public purpose because it extended the useful life of the landfill. *Id.* The court also found that the ordinance placed a minimal burden on interstate shipments of waste, and that the burden was outweighed by the putative benefit to the defendants—extending the useful life of the landfill so as to give the metropolitan

area time to find a new site for a landfill. *Id.*

■ Like *Evergreen,* Local Laws # 4 and # 5 treat most in-state waste in the same manner as out-of-state solid waste by prohibiting the deposit of either in the County. Since the defendant's legislation, on its face, regulates waste disposal in an evenhanded manner, it is subject to the *Pike* balancing test. *See id.; Evergreen,* 820 F.2d at 1484; *Washington,* 684 F.2d at 631; *Loretto,* 601 F.Supp. at 857. Local Laws # 4 and # 5 may serve a legitimate local purpose by addressing the depletion of the County's resources and its capacity for the disposal of solid waste generated within the boundaries of Cayuga County. *Evergreen,* 820 F.2d at 1485; *Bill Kettlewell Excavating, Inc. v. Michigan Dep't Nat'l Resources,* 732 F.Supp. 761, 766 (E.D. Mich.1990), *aff'd* 931 F.2d 413 (6th Cir. 1991). The burden the ordinance places on interstate commerce may not be "clearly excessive in relation to the putative local benefits" if there are alternative landfill sites widely available in the State, thereby resulting in a minimal burden on such commerce. *Evergreen,* 820 F.2d at 1485; *Bill Kettlewell,* 732 F.Supp. at 766. The plaintiffs' complaint does not allege facts which indicate that the burden on interstate commerce imposed by the subject ordinances is clearly excessive in relation to the putative local benefits to the County of Cayuga. However, such may be the case. Accordingly, the defendant's motion to dismiss the plaintiffs' second cause of action is granted without prejudice to the plaintiffs to file and serve an amended complaint on the defendant which details specifically any burden on interstate commerce the subject ordinances allegedly impose.

### Conclusion

The defendant's motion to dismiss the plaintiffs' first and second causes of action is granted without prejudice. Plaintiffs may file and serve an amended complaint on the defendant which alleges their claims with sufficient specificity within thirty days of the date of this order.

IT IS SO ORDERED.